## Branson, et al. v. Clover Fork Coal Company.

(Decided March 10, 1914.)

### Appeal from Harlan Circuit Court.

Mines and Mining—Negligence of Miner in Propping Mine.— Where the mine owner, in compliance with Sec. 2739b of the statute, furnishes the necessary props, it is the duty of the miner to set the props in place, and if he is injured by reason of his failure to do this, the master will not be liable.

F. F. ACREE, ZEB A. Stewart for appellants.

SAMPSON & SAMPSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

William Branson brought this suit by his next friend against the appellee Coal Company to recover damages for personal injuries sustained while working as a miner in a mine operated by it.

The case went to trial before a jury, and upon the conclusion of the evidence in behalf of Branson, the court directed a verdict for the Coal Company.

The petition, after alleging that Branson was under twenty-one years of age, charged that while he was employed in the mine digging coal, a large quantity of slate fell from the roof at a point between where he was working and the entrance to the mine, obstructing the track on which the coal cars ran in and out of the mine to such an extent that it could not be used; "that thereupon he and those laboring with him reported the fall of the slate to the bank boss, Roark, who thereupon directed the plaintiff and those employed with him to cut and shoot out a passageway through the rib or wall of coal and around said track and obstruction thereon.

"That while so engaged, at the direction of the bank boss, in digging out said passageway, and as a result of the gross negligence of the defendant in failing to build or construct a track or passage in or upon which to set the braces, caps or props used for propping up, bracing and supporting the roof of said mine, to prevent slate from falling, and as a direct result of such negligence and of the negligence of the defendant in furnishing such unsafe place in which to perform the duties required of him, a large quantity of slate fell from the roof of the mine upon him. * * *

"That he was an inexperienced boy sixteen years of age and had never worked in a mine exceeding a week; that on the day prior to his injury and on the day of his injury as well, he requested the bank boss to build or construct the track or passage in or upon which to set the braces and props to prevent the roof of the mine from falling, and the bank boss promised and assured him each time that he would have the same done, but that the defendant's agents and servants, including the bank boss, carelessly and negligently refused to build or construct same or to in any manner provide any means by which caps, braces or props could be set up, so that the plaintiff and those employed with him could safely do the work required of them, and that the plaintiff, relying upon the promises of the bank boss and the superior knowledge of the servants of defendant superior in authority to him, continued to work in said room and was thereby caused to be injured."

It will be observed that the gist of this petition is that his injuries were caused by the failure of the Coal Company to build a track, or passageway to permit props used for supporting the roof of the mine, to be put in place and which he was assured would be done, and that relying upon this assurance, he continued to work until he was injured. There is no averment in the petition that he did not know, or by the exercise of ordinary care could not have known of the dangerous conditions prevailing at the place where he was working, or that the Coal Company knew, or by the exercise of ordinary care could have known of these conditions. Nor is there any averment that he acted upon any assurance of the safety of the place where he was working, or that he was not warned of the dangers attending his work.

It might, however, be here noticed that at the conclusion of the evidence the plaintiff offered an unverified, amended petition, which the court refused to permit to be filed. In this petition it was averred "that the dangerous and unsafe condition of the place where plaintiff was required and directed to work, and at which he was injured, was unknown to him and could not have been known by the exercise of ordinary care," but there is no averment in this amended petition that the company knew, or by the exercise or ordinary care could have known of the dangerous condition of the place.

The evidence shows that Branson, who was under twenty-one years of age, and had little experience in

working in coal mines, was digging coal in company with his brother, Frank Branson, and Isaac Huff, and that Huff was a coal digger of long experience. These three men worked together in the same room and place, each being what might be called a helper to the other. About two days before Branson was injured, it was discovered that slate was falling from the roof of the room in which they were digging coal, or in the adjacent entry. Upon making this - discovery they knocked the props from under the roof at this place and a great quantity of slate fell in the room or entry and on the track on which the cars ran that carried the coal they were digging to the entrance of the mine. The result of this fall of slate was to so obstruct the track that they could not get any cars in which to load the coal they were digging, and they were not able to do any work.

After this condition was ascertained they went to see the mine boss, Roark, and he told them, in substance, that it would take some time to clear the track of the slate that fell on it, and the quickest and best way to open up their room so that cars could be run would be to widen the passageway where the slate fell, so that a new track could be laid around the old track and the slate. They thereupon commenced to and did widen the passageway, and cars were run in on a new track to within a point twenty or thirty feet distant from where they were digging coal. There is some evidence that the track could have been laid closer than this to the point where they were digging, but that the company failed to lay the track as far as it might have been laid.

It is further shown that for a space of eighteen or twenty feet from the place where Branson was working when injured, the roof of the room was not propped. He says that he did not know the roof was dangerous; but Huff testifies that it was dangerous and that it should have been propped to within three or four feet of where they were working. It is further shown that the attention of these men was called two or three times before the accident to the danger of working where they were without the roof being propped, although Branson says he did not know props were necessary or that the place was dangerous without them. But, however, this may be, it is certain that Huff knew the necessity for propping the roof and the danger in working without the roof being supported, and in view of the fact that Huff and the Bransons were working immediately together,

each of them being, as stated, what might be termed a helper to the other, each of them under the circumstances of this case must be charged with notice of the dangerous conditions when one of them says he did know of the danger and the evidence shows that the others could not avoid knowing it.

Especially should this principle be applied when there is no pleading or evidence that Branson was given any assurance of safety by the Coal Company, or its agents, or ordered to do the work without propping the roof. Branson was evidently not an experienced miner, and, although under twenty-one, he was of man-size and intelligence, and could not avoid knowing that the roof was dangerous in the vicinity they were working, because a few days before that a great quantity of the roof fell, as we have stated.

There is no room under the evidence for two opinions touching the question that the failure to build the track had nothing whatever to do with causing the slate to fall from the roof, or with making the place unsafe in which to work. It is further apparent from the evidence that Branson knew that props were necessary to the safety of the place, for the evidence shows that the company had furnished sufficient props, and he says the only reason the props were not used was because they would make it more inconvenient to get the coal from the place where they were digging it to the cars, some twenty feet or more away. It seems that with the cars this distance from the place the coal was being mined, it was necessary to re-handle it before putting it in the cars. In other words, if the track had been finished so that the cars could run within a few feet of the face of the coal, the coal could have been pitched immediately from the place where it was mined into the car. But with the car twenty feet or more away, it was necessary to pitch the coal from the place where it was mined to a point between that and the car, and then pitch it into the car, thus entailing in a measure double labor on the miners. Now Branson testifies that if the props had been put up they would have interfered with this re-handling of the coal and made it more inconvenient and difficult to load the cars and it is very clear from his evidence that this is the only reason why the roof of the mine was not propped.

The statute, in Sec. 2739b. makes it the duty of the mine owner to furnish the necessary props, and the duty

of the miner to set the props in place. Here the mine owner had furnished the props, but the miner had not put them in place. Under these circumstances, there is no escape from the conclusion that the accident in which Branson was injured was wholly due to the negligence of himself and his co-laborers in failing to prop, as they should and could have done, the roof of the mine, or if not that they each assumed voluntarily the risk of working under the existing conditions.

And this being so, under the pleadings and evidence, the court properly directed a verdict, and the judgment is affirmed.